UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Court File No. 12-CR-233 (DWF/TNL) |
| Plaintiff, | |
| v. | **REPORT & RECOMMENDATION** |
| Christopher Sean Daniels, | |
| Defendant. | |

John Kokkinen, Assistant United States Attorney, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street Suite 600, Minneapolis, MN, for the United States of America; and

James S. Becker, **OFFICE OF THE FEDERAL DEFENDER**, 300 South Fourth Street, Suite 107, Minneapolis, MN, for Defendant.

## I.  INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Christopher Sean Daniels's Motion to Suppress Statements (Docket No. 21). This matter has been referred to this Court for Report and Recommendation to United States District Judge Donovan W. Frank.

Daniels is charged with possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  (Docket No. 1.)  The Court heard oral argument on Daniels's Motion on November 9, 2012.  John Kokkinen appeared on behalf of the Government, and James Becker appeared on behalf of Defendant.  The Court heard testimony from Sergeant Sheila Lambie of the St. Paul Police Department.  The following Government

Exhibits were offered and received: Exhibit 1 is a CD recording of Sgt. Lambie's interview of Defendant; and Exhibit 2 is a completed *Miranda* waiver form signed and initialed by Defendant. The Court took the issue under consideration following the hearing.

## II.   FINDINGS OF FACT

Sgt. Lambie and her partner, Sergeant Bill Haider, interviewed Daniels in an interview room at the St. Paul Law Enforcement Center. According to Sgt. Lambie, she and her partner were dressed in plain clothes, and neither of them was armed. Sgt. Lambie testified that Daniels appeared sober during the interview. Sgt. Lambie further testified that Daniels seemed to understand her questions, and that his responses made sense in context and were on topic. Government Exhibit 1 is a CD containing an audio recording of Sergeant Lambie's interview of Defendant from September 4, 2012. The Court has reviewed the recording in its entirety. The contents can be briefly summarized as follows:

The interview commenced at 8:54 a.m. At the beginning of the interview, Daniels was provided a *Miranda* waiver form. Sgt. Lambie read each of the rights listed on the standardized form, and Daniels initialed next to each right to indicate that he understood the right. Daniels then orally indicated that he understood the rights articulated on the *Miranda* form and signed the form. The officers then proceeded to interview Daniels. The officers did not yell or raise their voices, and Daniels responded directly to their questions. At 18:24 into the interview, Sgt. Lambie said the following:

> My partner and I here, we work in homicide, OK? Now, he's got more experience than you are alive at working here, OK? He's been a cop that long. All right? I've worked in our gun unit, and I've done a lot of different things in covering homicide. OK?

Sgt. Lambie then continued the interrogation. Beginning at 21:00 into the interview, Daniels made several incriminating statements. Sgt. Lambie concluded the interview at 9:20 a.m.

## III.   CONCLUSIONS OF LAW

Daniels moves to suppress his statements from the September 4 interview, arguing that his statements responding to Sgt. Lambie's interrogation were involuntary and the product of coercion, and admitting them at trial would violate his rights under the Fifth Amendment.

Before questioning a suspect within the context of a custodial interrogation, "a suspect must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *J.D.B. v. North Carolina*, __ U.S. __, __, 131 S. Ct. 2394, 2401 (2011) (quotation omitted); *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966). The "voluntariness" of the questioning "is a legal question requiring independent federal determination." *Miller v. Fenton*, 474 U.S. 104, 110 (1985). "'The test for determining the voluntariness of a confession is whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will.'" *United States v. Aldridge*, 664 F.3d 705, 711 (8th Cir. 2011) (quoting *United States v. Cody*, 114 F.3d 772, 776 (8th Cir. 1997)).

At the outset, the Court determines that Daniels received adequate *Miranda* warnings. Daniels received, read, and signed a *Miranda* form that enumerated his right to silence, his right to counsel during questioning, and his right to free counsel. Gov't Ex. 2. According to Sgt. Lambie's testimony, Daniels had no trouble following along while she read him his rights; he seemed to understand his rights, appeared sober, and responded logically and coherently to her questions. Daniels was informed of his rights by the officers and by the written *Miranda* form; he initialed next to each *Miranda* right to signal that he understood it; and he made voluntary statements to the officers acknowledging his rights. Accordingly, the Court determines that the officers adequately informed Daniels of his *Miranda* rights.

Daniels argues that his statements to the officers after being told they worked in the homicide division were not voluntary. To determine whether a custodial statement is voluntary, the Court must evaluate the totality of the circumstances, including "'the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition.'" *United States v. Boslau*, 632 F.3d 422, 428 (8th Cir. 2011) (quoting *Sheets v. Butera*, 389 F.3d 772, 779 (8th Cir. 2004)). The fact that officers might elicit incriminating statements "through a variety of tactics, including claiming not to believe a suspects explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices," does not necessarily render a confession involuntary. *United States v Brave Heart*, 397 F.3d 1035, 1041 (8th Cir. 2005) (internal quotation marks omitted). "Whatever the facts

of an individual case, our polestar always must be to determine whether or not the authorities overbore the defendant's will and critically impaired his capacity for self-determination." *United States v. LeBrun*, 363 F.3d 715, 725 (8th Cir. 2004).

Here, the interview was not excessively long, lasting only 26 minutes. Daniels is an adult of normal intelligence with a high-school education, and he has experience in the criminal justice system. Daniels was alert and responsive to Sgt. Lambie's questions. Sgt. Lambie credibly testified that Daniels appeared alert and coherent, and Daniels did not tell the officers that he was tired or under the influence of alcohol or drugs. The officers were not physically or verbally aggressive to Daniels, and the "record reveals no threats, promises, violence, or other improper conduct on the part of the police in interrogating" Daniels. *Butzin v. Wood*, 886 F.2d 1016, 1019 (8th Cir. 1989).

Daniels's argument that his statements were not voluntary after learning that Sgt Lambie and Sgt. Haider worked in the homicide division is unconvincing. Whatever psychological pressure being interrogated by homicide detectives might create, informing Daniels that the officers worked in a particular division of the St. Paul Police Department is not "sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (finding that a promise not to prosecute did not render a confession involuntary). After reviewing the record and taking the totality of the circumstances into account, the Court determines that Daniels's statements to the Sgt. Lambie and Sgt. Haider were voluntary and not the product of coercion. Accordingly, his Motion to Suppress will be denied.

## IV. CONCLUSION

Based on the foregoing, the memoranda and exhibits of the parties, the arguments of counsel, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant Christopher Sean Daniels's Motion to Suppress Statements (Docket No. 21) be **DENIED**.


Date: November 27, 2012               s/ *Tony N. Leung*
                                      Tony N. Leung
                                      United States Magistrate Judge
                                      for the District of Minnesota

                                      *United States v. Christopher Sean Daniels*
                                      File No. 12-cr-233 (DWF/TNL)


Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **December 11, 2012.**