UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 12-233 (DWF/TNL) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Christopher Sean Daniels, | |
| Defendant. | |

Christopher Sean Daniels, *pro se.*

James S. Alexander and Justin A. Wesley, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

# INTRODUCTION

This matter is before the Court on Defendant Christopher Sean Daniels's, ("Daniels") *pro se* motion for compassionate release in light of the COVID-19 pandemic. (Doc. No. 125 ("Motion"); *see also* Doc. No. 126 ("Def. Memo.").)[1] The United States of America (the "Government") opposes Daniels's Motion.[2] (Doc. No. 133.)  For the reasons discussed below, the Court respectfully denies Daniels's Motion.[3]

---

[1]   Daniels's supporting memorandum is the same document he submitted to the warden at his facility for compassionate release.  (*See* Def. Memo.)

[2]   The Court also received and considered Daniels's reply to the Government's opposition.  (Doc. No. 137("Reply").)

[3]   Daniels also filed a *pro se* motion to appoint counsel.  (Doc. No. 130.)  "[T]here is no general right to counsel in post-conviction habeas proceedings for criminal

## BACKGROUND

On April 10, 2013, Daniels was convicted of Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  (Doc. No. 63; *see also* Doc. No. 1.)  On November 1, 2013, this Court sentenced him to 204 months' imprisonment to be followed by a 5-year term of supervised release.  (Doc. Nos. 77, 78.)

Daniels is currently incarcerated at Pekin FCI in Pekin, IL with an anticipated release date of February 27, 2027.  Federal Bureau of Prisons, Inmate Locator, *https://www.bop.gov/inmateloc/* (last visited Feb. 23, 2021).  Pekin FCI reports no active COVID-19 cases among its inmates and 8 among its staff, 792 inmates and 71 staff who have recovered, and no inmate or staff deaths from the virus.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited Feb. 23, 2021).  To date, the Bureau of Prisons ("BOP") has performed 1,145 tests for COVID-19 at Pekin FCI with 804 of them positive for the virus.  *Id.*

Daniels, who is 43 years old, now moves for compassionate release on the grounds that he is at increased risk of severe infection from COVID-19 because he suffers from chronic asthma.  (Motion at 4; Def. Memo. at 1; Reply at 3-5 *see also* Doc. No. 135 ("Medical Records").)  He also expresses concern about his increased risk of contracting COVID-19 in a prison setting.[4]  (Motion at 4; Def. Memo. at 2; Reply at 5.)  Daniels

---

defendants."  *United States v. Craycraft*, 167 F.3d 451, 455 (8th Cir. 1999); *Pollard v. Delo*, 28 F.3d 887, 888 (8th Cir. 1994).  The Court respectfully denies Daniels's motion to appoint counsel.

[4]     The record reflects that Daniels contracted COVID-19 on October 22, 2020.  (Medical Records at 12.)

asserts that release is appropriate because "[t]here is no dispute that the nature and circumstances of [his] charged offense and criminal history indicates [sic] that he is non-violent and poses no danger to the community." (Def. Memo. at 2; *see also* Reply at 6-7.) He also contends that because he has served almost half of his sentence and has committed himself to rehabilitation, the sentencing factors set forth in 18 U.S.C. § 3553(a) weigh in favor of release. (Reply at 7-9.)

## DISCUSSION

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13 ("Sent'g Comm'n Pol'y Statement" or "Statement"), cmt. n.1(a)(ii).

If "extraordinary and compelling reasons" exist, a reduction of sentence is appropriate when "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)" and "the reduction is consistent with [the Sentencing Commission's] policy statement." Statement. The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[5] *Id.*

The record reflects that Daniels requested compassionate release from the warden at Pekin FCI on August 18, 2020 and that it was denied on September 28, 2020. (*See* Doc. Nos. 126; 134.) Because more than 30 days have passed since his request was denied, the Court finds that Daniels's Motion is properly before it.

After a careful review of Daniels's Motion and other documentation, including his Medical Records, the Court finds that his circumstances do not meet the demanding standard necessary for compassionate release. Specifically, the Court finds that Daniels does not suffer from any medical condition, alone or in combination with the presence of COVID-19 at his prison facility, that is a sufficiently extraordinary and compelling reason to warrant release. Although moderate to severe asthma may increase Daniels's risk for severe infection from COVID-19, it is unclear from Daniels's Medical Records

---

[5] Although judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A). *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

whether he currently suffers from asthma, or how severe the alleged asthma is.[6]  (*See* Medical Records at 4, 8, 11 (indicating possible history of asthma but no information supporting current diagnosis or impairment).)  Even if Daniels does suffer from asthma, the Court still finds that release is not warranted because there is no indication that Daniels's ability to provide self-care is diminished or that his facility is unable to provide proper medical care.

The Court also recognizes Daniels's concern about contracting the virus in a prison setting, particularly after already having contracted it once.[7]  Notwithstanding, this Court agrees with others that a generalized fear of contracting COVID-19 is an insufficiently extraordinary and compelling reason to warrant release.  *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020).

It is truly unfortunate so many inmates at Pekin FCI have been infected with COVID-19.  It is promising, though, that the facility was able to provide appropriate medical care such that all inmates who contracted the virus, including Daniels, successfully recovered.  The Court also notes that Pekin FCI continues to employ

---

[6]     *See* Centers for Disease Control and Prevention, <u>Coronavirus Disease: People with Certain Medical Conditions</u>, *https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html* (last visited Feb. 23, 2021) (stating that moderate to severe asthma may increase a person's risk of severe infection from COVID-19).

[7]     The Centers for Disease and Prevention does not recognize prior COVID-19 infection as a risk factor for severe illness should a person contract the virus again.  *See id.*

5

measures to mitigate the spread of COVID-19 and that the BOP has currently administered over 52,000 doses of the COVID-19 vaccine to all staff and inmates who wish to receive it.[8]  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited Feb. 23, 2021).  Sadly, until the vaccine is more widely available, some level of continued spread is inevitable.  In spite of the risk, the BOP must continue to carry out its charge to incarcerate sentenced criminals to protect the public and any release must be balanced against the danger it poses to society.

Here, the Court finds that even if Daniels did present an extraordinary and compelling reason, release is not appropriate because the Court cannot conclude that Daniels does not pose a danger to the safety of the community.[9]  (*See, e.g.*, PSR ¶¶ 6, 21, 36-37, 53.)  Likewise, the Court finds that the § 3553(a) sentencing factors weigh

---

[8]  Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of COVID-19" and "to ensure the continued effective operation of the federal prison system." *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, *https://www.bop.gov/resources/news/20200313_covid-19.jsp* (last visited Feb. 23, 2021).  Those steps include limiting visits and internal movement, increased hygiene measures, and screening of both staff and inmates.  (*Id.*)  The BOP periodically updates its Plan and is currently in Phase Nine.  Federal Bureau of Prisons, Coronavirus (COVID-19) Phase Nine Action Plan, *https://prisonology.com/wp-content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf*.  (last visited Feb. 23, 2021).

The BOP is also exercising greater authority to designate inmates for home confinement.  Federal Bureau of Prisons, COVID-19: Coronavirus, *https://www.bop.gov/coronavirus/* (last visited Feb. 23, 2021).  Since March 2020, the BOP has transferred more than 21,000 inmates to home confinement.  *Id.*

[9]  Daniels has served approximately half of his sentence, and less than the mandatory minimum of 180 months.  The Court cannot overlook the violence of Daniels's offense conduct and pattern of criminal conduct to conclude that he does not pose a danger to public safety after serving just half of his sentence.

strongly against release. Specifically, the Court finds that such a significant sentence reduction would not adequately address the seriousness of the charges of Daniels's conviction, promote respect for the law or provide a just punishment.[10]

## CONCLUSION

For the reasons set forth above, the Court finds that Daniels fails to present an extraordinary and compelling reason to warrant compassionate release. The Court also finds that release is not appropriate because it cannot conclude that Daniels poses no danger to the safety of the community and because the § 3553(a) factors weigh against release.[11]

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Christopher Sean Daniels's *pro se* motion for compassionate release in light of the COVID-19 pandemic (Doc. No. [125]) and his *pro se* motion for appointment of counsel (Doc. No. [130]) are respectfully **DENIED**.

Date: February 24, 2021              s/Donovan W. Frank
                                     DONOVAN W. FRANK
                                     United States District Judge

---

[10] While the Court finds that release is not appropriate at this time, the Court commends Daniels for his commitment to rehabilitation and encourages him to maintain his effort so that he may be the best version of himself when he is released.

[11] To the extent that Daniels's Motion may be construed as a request for home confinement, the Court briefly notes that the authority to determine a prisoner's place of confinement rests exclusively with the BOP, depriving the Court of jurisdiction to consider any such request. *Id.* at *2-*3. *United States v. James*, Cr. No. 15-255, 2020 WL 1922568, at *2-*3 (D. Minn. Apr. 21, 2020).